# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
July 10, 2023
Lyle W. Cayce
Clerk

No. 22-10848

Harold Edward Rutila, IV,

*Plaintiff—Appellant*,

versus

United States Department of Transportation; Federal Aviation Administration,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:16-CV-2911, 3:16-CV-3433

Before King, Smith, and Elrod, *Circuit Judges*.

Per Curiam:

This action arises from several unsuccessful requests by Harold Edward Rutila, IV to the Federal Aviation Administration for records under the Freedom of Information Act, 5 U.S.C. § 522. The district court granted summary judgment for the Department of Transportation and the Federal Aviation Administration. Upon review, we AFFIRM.

No. 22-10848

I.

In 2016, Harold Edward Rutila, IV attended a Federal Aviation Administration ("FAA") air traffic controller training program at the FAA Academy. Because he failed the final performance assessment, Rutila was not retained as a permanent air traffic controller.

Several months later, Rutila submitted ten requests under the Freedom of Information Act ("FOIA") to the FAA seeking various categories of records. Dissatisfied with the FAA's responses to his requests, Rutila brought two suits against the FAA and its parent agency, the Department of Transportation ("DOT"; collectively with the FAA, "Appellees"), seeking, *inter alia*, injunctive relief compelling the release and disclosure of the requested agency records. The district court later consolidated the two lawsuits.

Appellees moved to dismiss most of Rutila's claims, and the district court dismissed seven of Rutila's requests in May 2019 for lack of subject matter jurisdiction. Appellees then moved for summary judgment on the three remaining requests, which the district court granted in May 2020. Rutila appealed and argued that the district court erred in concluding that it did not have subject matter jurisdiction with respect to five of his requests. We agreed and reversed, holding that Rutila alleged facts sufficient to invoke the court's subject matter jurisdiction, and remanded the case back to the district court. *Rutila v. U.S. Dep't of Transp.*, 12 F.4th 509, 511 (5th Cir. 2021). On remand, Appellees moved for summary judgment a second time on the five revived requests, which the district court granted in June 2022.

Rutila now appeals the district court's judgment with respect to three of his requests: (1) FOIA Request 2016-009149 ("FOIA 9149"), which seeks FAA Academy Standard Operating Procedures ("SOPs") and related emails; and (2) FOIA Request 2017-000862 ("FOIA 862") and (3) FOIA

Request 2017-001174 ("FOIA 1174"), which respectively seek copies of specific individuals' application software profiles and Windows Explorer directories and folder structures.

## II.

FOIA "requires federal agencies to make Government records available to the public," *Milner v. Dep't of the Navy*, 562 U.S. 562, 564 (2011), and "empowers federal courts to order an 'agency' to produce 'agency records improperly withheld' from an individual requesting access," *Forsham v. Harris*, 445 U.S. 169, 171 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). Most FOIA cases are resolved at summary judgment. *Flightsafety Servs. Corp. v. Dep't of Labor*, 326 F.3d 607, 610 (5th Cir. 2003).

We review *de novo* the district court's grant of summary judgment under FOIA, using the standards used by the district court in reviewing the agency's decisions to deny access to or otherwise not produce the requested documents. *Id.* Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

### A.

Rutila first challenges the district court's conclusion that the FAA issued a timely demand for fees for the services required to retrieve the records sought by FOIA 9149. On September 7, 2016, Rutila submitted a request to the FAA seeking "FAA Academy Quality Assurance (AMA–505b) SOPs concerning evaluation procedures/methods/guidance/etc., including emails concerning said guidance or modifications and interpretations to or regarding the guidance." Four days later, on September 11, Edward Drake, a FOIA Program Coordinator, responded to Rutila's

request "needing clarification on the time frame [Rutila was] seeking regarding the requested SOP's, i.e., what month(s) and year(s)?" He indicated that "[t]his request will not be processed until clarification is confirmed." That same day, Rutila responded that, "[i]n terms of SOPs concerning evaluation procedures/methods/guidance/etc.," he was "seeking a copy of the most current version(s) plus relevant notices and supplements, if any exist, as well as the version(s) used prior to the current one, plus its notices and supplements" and specified that, "[i]n terms of the time frame for emails requested, a period of 12 months beginning on September 7th, 2015 is acceptable." The FAA then acknowledged receipt of FOIA 9149 on September 14.

On September 16, Drake sought clarification from Rutila regarding the maximum amount he was willing to pay because the search "may be somewhat extensive." Rutila responded that day indicating he would be willing to pay $25 but "may amend this maximum dollar amount" once he received a fee estimate. On October 7, Drake provided Rutila a fee estimate letter, which estimated the charges for the requested records to be $2,570. At that point, Rutila stated his belief that "the FAA is unable to assess fees for this request, as it is already overdue" and requested that it "be processed with a waiver of fees." Rutila never paid the fees, and the FAA did not produce records responsive to his request.

Generally, upon any FOIA request, an agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request." 5 U.S.C. § 552(a)(6)(A)(i); *see also* 49 C.F.R. § 7.31(a) (requiring DOT to abide by the twenty-day deadline). When DOT fails to comply with this time limit, it generally does not assess search fees. 49 C.F.R. § 7.43(f). The parties disagree as to whether the FAA's October 7 fee assessment was made within twenty business days of receiving Rutila's FOIA request, which requires us

No. 22-10848

to determine at what time Rutila's request qualified as a received FOIA request.

DOT regulations provide that "[a] request is not considered to be a FOIA request if the record or records sought are insufficiently described such that DOT is unable to respond as required by FOIA." 49 C.F.R. § 7.24(d). In such a case, the twenty-day clock "will not start to run until the request is determined by DOT to be sufficiently understood to enable DOT to respond as contemplated under FOIA (or would have been so determined with the exercise of due diligence by an employee of DOT) and is considered received." *Id.* A "request is considered received when it is first received by the FOIA office to which it should have been originally sent . . . but in any event not later than ten Federal working days after it is first received by any DOT FOIA Requester Service Center." *Id.* § 7.24(e). Furthermore, "DOT's time limit for responding to a FOIA request . . . may be tolled one time to seek additional information needed to clarify the request and as often as necessary to clarify fee issues with the requester." *Id.* § 7.24(f); *see also id.* § 7.35.

If Rutila's request constituted a received FOIA request on September 7, when he first submitted his request, then the deadline for assessing fees had passed; if it was not a received FOIA request until September 9 or later, then the FAA met the deadline and the fee assessment was appropriate. Rutila addresses a different question in his briefing: whether DOT tolled the twenty-day working period "for the purpose of seeking additional information needed to clarify the request." *Id.* § 7.35(a). He argues that the additional information requested on September 11 was not needed to clarify the request because Drake requested a timeframe for one category of records—the requested SOPs—and Rutila declined to provide any time limits for that portion of the request. Rutila concedes that, in his September 11 reply, he limited the scope of the email portion of the request but contends

that this was not requested by Drake and thus not necessary to clarify the request. Because the FAA accepted Rutila's request and generated a fee estimate despite his failure to provide a timeframe for the requested SOPs, he argues that this information cannot be considered necessary for clarification.

But Rutila fails to address whether his initial September 7 request was sufficiently described such that it would be considered a FOIA request. *Id.* § 7.24(d). A request under FOIA must "[d]escribe the record or records sought to the fullest extent possible," *id.* § 7.24(a)(5), and a request is sufficiently described for the purposes of FOIA if "the agency is able to determine precisely what records are being requested," *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982)). Rutila's September 7 request did not meet this standard. In his request, Rutila stated that he sought "SOPs concerning evaluation procedures/methods/guidance/etc."—he did not say whether he requested all such SOPs in the FAA's possession, the current SOPs, or the SOPs that were in effect during a certain period. As Drake's declaration explained, Drake "determined that the request as written was not a perfected request" because "the request as written appeared to seek many iterations of various Academy SOPs and related records and did not define a timeframe."

Rutila's September 11 response provided additional information, which enabled the FAA to determine what records were being requested. Specifically, he explained that he was seeking "a copy of *the most current version(s)* plus relevant notices and supplements, if any exist, *as well as the version(s) used prior to the current one*, plus its notices and supplements." Rutila had not indicated which versions of SOPs he was seeking in his initial request, and for this reason his contention that he did not provide additional information on September 11 relating to his request for SOPs is without merit. We hold that Rutila's request was not a FOIA request until at least

No. 22-10848

September 11, when he described which SOPs he was requesting.[1] Therefore, the FAA's fee assessment on October 7 was timely, and the FAA was not obligated to waive fees for FOIA 9149.

**B.**

Rutila also challenges the determination by the FAA and district court that FOIA 862 and FOIA 1174 were not proper FOIA requests because they required the FAA to create a record. As relevant to this appeal, FOIA 862 sought copies of "the Active Directory Account profile (all tabs) for Madeline Bostic" and "the NEXTGEN Toolbox profile for Madeline Bostic," and FOIA 1174 sought "[a] copy of the directory or folder structure of Windows Explorer for all of Rick Mitchell's network drives and 'My Documents' folders."

Dedra Goodman, the Manager of the FAA's FOIA Program, explained in a declaration that, due to the nature of the systems and structures identified by Rutila's requests, "the only way to provide the information" sought by FOIA 862 and FOIA 1174 "would be to take a screenshot of the requested data displayed on a screen." The Active Directory system is "the FAA's main directory service," which "allows users to manually input their profile information, but also pulls data from various other sources . . . and organizes and displays that data in real time." It is not a database and "not configured to enable administrative users to

---

[1] Appellees argue that Rutila's request did not constitute a FOIA request until September 16, when Rutila further specified that he was seeking "any document containing methods, guidance, or procedures for employees or contractors of AMA–505b *related to conducting and/or grading evaluations*" and confirmed that the maximum dollar amount he was willing to pay was $25 (though he also stated that he might amend this amount depending on the fee estimate). However, we need not decide the precise moment Rutila's request qualified as a FOIA request because the FAA's October 7 fee assessment satisfied the twenty-day deadline so long as Rutila's request was not perfected before September 9.

Case: 22-10848    Document: 67-1    Page: 8    Date Filed: 09/01/2023

No. 22-10848

export data in a usable format." The NextGen Toolbox system "was used to manage mailing lists and for email password resets prior to 2014," and, "[l]ike Active Directory, this system displayed data to users but was not set up in a way that allowed data to be exported." The FAA does not maintain a record of Active Directory or NextGen Toolbox profiles, so the only way to produce such a record of Ms. Bostic's profiles would have been to take a screenshot of the data displayed in the system. Similarly, "the FAA does not maintain documents that reflect an employee's network drives, network directory, My Documents folder, or Windows Explorer folder structure," so "the only way to capture this data would have been to take a screenshot of Mr. Mitchell's folder structures."

Rutila acknowledges that "FOIA imposes no duty on [an] agency to create records," *Forsham v. Harris*, 445 U.S. 169, 186 (1980); rather, "it only obligates [an agency] to provide access to those which it in fact has created and retained," *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980). He contends, however, that searching an electronic system and printing and releasing the records of said search does not involve the creation of a record.

It is undisputed that the FAA does not maintain screenshots of individuals' Active Directory Account profiles, NextGen Toolbox profiles, or Windows Explorer directories and folder structures.[2] Therefore, for the

---

[2] Rutila accuses the district court of failing to examine "whether screenshots were the *only* way to extract or export this information." However, Goodman submitted that the only way to produce the information Rutila requested is via screenshot, and her declaration is entitled to a "'presumption of legitimacy' unless there is evidence of bad faith in handling the FOIA request." *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)). Rutila provides no such evidence; therefore, we presume that screenshots are the only available method for producing the requested information.

FAA to produce the requested records, it would have to open the relevant software, display the requested data, and take a screenshot of the displayed information. A sister circuit has previously held that FOIA does not require an agency to undertake that process because it requires creating a new record, *Brown v. Perez*, 835 F.3d 1223, 1237 (10th Cir. 2016), and we agree. *See also Colgan v. Dep't of Just.*, No. 14-cv-740, 2020 WL 2043828, at *10 (D.D.C. Apr. 28, 2020) ("For the government to produce the requested screenshots, it would have to open the software and create a screenshot . . . . FOIA imposes no such duty on agencies, and the search screen is not simply another 'form or format' of an already maintained record.").

Relying on *Schladetsch v. U.S. Department of Housing & Urban Development*, Rutila contends that, where an agency already retains all the information being requested, producing a screenshot of that information does not constitute creating a record. No. 99-0175, 2000 WL 33372125 (D.D.C. Apr. 4, 2000). But that case is readily distinguishable. In *Schladetsch*, the plaintiff requested that the Department of Housing and Urban Development ("HUD") compile certain historical records relating to listings of unpaid refunds for loans, which HUD partially denied. *Id.* at *1. HUD conceded that it retained all the information the plaintiff requested but argued that collating it in the isolated compilation sought by the plaintiff would require HUD to create a new record. *Id.* at *2. The district court disagreed and held that, "[b]ecause HUD has conceded that it possesses in its databases the discrete pieces of information which [the plaintiff] seeks, extracting and compiling that data does not amount to the creation of a new record." *Id.* at *3. Here, by contrast, the information Rutila seeks is not maintained by the FAA in a database or otherwise. Producing this information would require more than an "electronic search of computer databases" for pre-existing records followed by "extract[ion] and compil[ation]," *id.*; it would require the FAA "to open the software and create a screenshot, which would not otherwise

exist from the last time the agency opened the software to the search screen," *Colgan*, 2020 WL 2043828, at *10. FOIA does not obligate agencies to satisfy such requests.

For similar reasons, Rutila's reliance on *ACLU Immigrants' Rights Project v. U.S. Immigration & Customs Enforcement* is misplaced. 58 F.4th 643 (2d Cir. 2023). There, the American Civil Liberties Union ("ACLU") requested that United States Immigration and Customs Enforcement ("ICE") produce agency records pertaining to five stages of the immigration enforcement and deportation process, with anonymized unique identifiers for each individual or case to allow the ACLU to track individual aliens across the produced data.[3] *Id.* at 646, 648. ICE produced most of the requested information but did not comply with the ACLU's request to provide anonymized unique identifiers because it would require the creation of new records. *Id.* at 649–50. ICE acknowledged that it had the "ability to track a single individual across the various stages of immigration proceedings"—in other words, "although ICE stores immigration data by event, it can, and on an *ad hoc* basis does, access that information in a person-centric manner in the regular course of agency business." *Id.* at 655, 658. Accordingly, the Second Circuit held that, in the ACLU's urged substitution, wherein "ICE would query databases for datapoints by reference to meaningless" identifiers, "using a query to search for and extract a particular arrangement or subset of data *already maintained in an agency's database* does not amount

---

[3] Specifically, the ACLU requested that ICE replace Alien Identification Numbers, or A-Numbers, with anonymous identifiers because A-Numbers are likely exempt from disclosure under FOIA. *See ACLU Immigrants' Rts. Project*, 58 F.4th at 648–49 & n.5. There was no question that ICE maintained the information requested by the ACLU; the only dispute was whether FOIA mandated that ICE produce the information in a manner that provided the ACLU the same functionality, *i.e.*, the ability to relate records using an identifier linked to individual persons.

No. 22-10848

to the creation of a new record." *Id.* at 659 (emphasis added) (quoting *Ctr. for Investigative Reporting v. DOJ*, 14 F.4th 916, 938 (9th Cir. 2021)). Rutila's request is markedly different because he seeks information that Appellees do not actively maintain in any format. His inquiry would not merely require Appellees to produce information they retain and use, albeit in a slightly altered format; it would instead require Appellees to produce a new record—a screenshot—of information it does not store. Again, FOIA imposes no such obligations on agencies.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.